```
                   UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
```

|                      |   |                                    |
|----------------------|---|------------------------------------|
| DENNIS ROIE,         : | Civil Action No. 11-4819 (JBS) |
|         Petitioner,  : |                                |
|                      : | **MEMORANDUM OPINION**         |
|         v.           : | **AND ORDER**                  |
| J.T. SHARTLE,        : |                                |
|         Respondent.  : |                                |

IT APPEARING THAT:

1.  On August 26, 2011, the Clerk received Petitioner's § 2241 petition ("Petition"); the Petition was dated August 18, 2011. See Docket Entry No. 1. The Petition arrived unaccompanied either by the applicable filing fee of $5.00 or by an in forma pauperis application. See id.

2.  The Petition, a five-page document, suggested that petitioner Dennis Roie ("Petitioner"), a federal inmate currently confined at the F.C.I. Fairton, Fairton, New Jersey, wished to challenge the execution of his federal sentence by the Bureau of Prisons ("BOP"). See id. See id. The first page of the Petition was dedicated to: (a) Petitioner's request to construe his Petition liberally in light of Petitioner's pro se litigant status; and (b) Petitioner's statement that the Petition was properly filed under § 2241 – rather than § 2255 – since Petitioner did not challenge the validity of his federal conviction underlying

his sentence. See id. at 1.  The second page of the Petition continued to elaborate on the propriety of § 2241 jurisdiction and, in addition, indicated that Petitioner wished to rely on the holding of Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990). See id. at 2.  This reference to Barden was accompanied by Petitioner's assertion that "due process is flexible" and by his observation that Petitioner "expected that the state judge's order imposing a concurrent sentence to be honored [by the BOP]." Id.  On the third page of the Petition, Petitioner: (a) "request[ed] that this . . . Court [would] grant Petitioner nunc pro tunc credit under comity"; (b) asserted that "federal courts [should] give state court judgments [f]ull [f]aith and [c]redit"; and (c) began his rather lengthy discussion of Breeden v. New Jersey Dep't of Corrections, 132 N.J. 457 (1993).[1]  This

---

[1] The rationale of Petitioner's interest in Breeden is not entirely clear to this Court.  In Breeden, prisoner escaped to a foreign state prior to completing his New Jersey sentence; in that foreign state, he committed another offense and was convicted and sentenced there.  That foreign state intended that the prisoner's sentence there would run concurrently with his uncompleted New Jersey sentence.  Upon completing his foreign sentence and being returned to New Jersey, the prisoner applied to the New Jersey DOC seeking credit for time he served in the foreign state.  The DOC denied his request finding that, absent a judicial determination by New Jersey courts, it could not grant the credit requested.  The Appellate Division disagreed and held the DOC was impelled to honor the direction of the judge of the foreign state.  The Supreme Court of New Jersey reversed; it held that the determination of whether to honor the foreign state's decision was entirely a judicial function because the judiciary was the sentencing authority of the state.  Therefore the Supreme

      discussion of Breeden consumed the remainder of the Petition.  See generally, Docket Entry No. 1.

3. The only statements relevant to Petitioner's challenges that this Court could distill from the Petition, upon careful reading, were limited to, literally, two statements: (a) that Petitioner's federal sentence was rendered by a certain "[J]udge Huvelle"; and (b) that "state sentencing [J]udge Jeffrey Mineheart rendered . . . Petitioner's state sentence [with the directive that it would] run concurrent with his federal term of imprisonment."  Id. at 2.

4. Since, short of these two brief factual assertions, the Petition provided this Court with nothing but Petitioner's perceptions as to what the law is or should be, the Court conducted its own research from the public record of his underlying federal sentencing, striving to determine the basis for Petitioner's challenges.  This research discloses federal criminal proceedings conducted against a certain group consisting of Charles Allen Matthews III, Melvin Lewis

---

Court of New Jersey ruled that the prisoner was required to file a application for resentencing with the judge who rendered his New Jersey sentence, and that judge had the authority to consider the interests of equity and comity and whether the penal purposes of its original sentence would be served by allowing the prisoner the credit sought.  Hence, under the holding of Breeden, the BOP would have no authority to grant prisoners any nunc pro tunc credit.  However, the federal regime, as set forth in § 3621(b) and detailed in Barden, is different from the state regime ensuing from the holding reached in Breeden.

3

Green, Sheldon Simmons, Carl Yates Jr. and Dennis Roie; these proceedings took place in the United States District Court for the District of Columbia and were presided by Judge Ellen S. Huvelle ("Judge Huvelle").[2]  See United States v. West, et al. ("Federal Proceedings"), Crim. Action No. 01-0168 (ESH) (D.D.C.).  This Court, therefore, presumes defendant "Dennis Roie" in that action is the Petitioner, and that his current federal sentence, as referenced in his petition, was the one rendered by Judge Huvelle as a result of the Federal Proceedings.  The docket sheet in the Federal Proceedings indicates that, on August 9, 2001, Petitioner and his co-defendants were charged with conspiracy to commit and commission of an armed bank robbery, and possession of firearm during a crime of violence.  See Federal Proceedings, Docket Entry No. 1.  Apparently, the Federal Proceedings turned out both lengthy and complex, and coincided with Petitioner's incarceration on state charges.  Indeed, the docket in the Federal Proceedings indicates that 2 1/2 years after the Federal Proceedings were commenced, that is, on January 14, 2004, a writ of habeas corpus ad

---

[2]  In these criminal proceedings held before Judge Huvelle, defendant "Dennis Roie" was also referred to as "Denny Mack." This Court located many criminal proceedings instituted in various state and federal courts against "Denny Mack," however, this Court has no reason to conclude that Petitioner was (or was not) the defendant in those other proceedings.

    prosequendum was issued by Judge Huvelle as to Petitioner, see id., Docket Entry No. 257, and – while being produced under that writ, Petitioner plead guilty on February 25, 2004.  See id., Docket Entry No. 279.  It appears that, upon entering his guilty plea, Petitioner was returned to the facility where he was serving his state sentence, i.e., Curran-Fromhold Correctional Facility, Philadelphia, Pennsylvania (this is so because another writ of habeas corpus ad prosequendum was issued by Judge Huvelle to the warden of that facility for the purposes of Petitioner's sentencing, which was conducted on August 18, 2004).  See id., Docket Entries Nos. 288, 295 and 299.  On August 20, 2004, Petitioner's Federal Proceedings concluded; he was sentenced to 84 months of incarceration (that sentence was the longest and was ordered to run concurrently with other, shorter sentences on other counts of conviction imposed by Judge Huvelle).  See id., Docket Entry No. 303.

5. In light of the foregoing, the Court surmises that – at some point in time prior to August 20, 2004 – Petitioner was arrested on certain charges by the Commonwealth of Pennsylvania, and these charges led to Petitioner's Pennsylvania conviction and sentence that Petitioner was

serving at the Curran-Fromhold Correctional Facility.[3] Reading this deducement in conjunction with Petitioner's scarce factual statements made in the Petition, the Court presumes that – sometime between August 2001 and August 2004 – Judge Minehart sentenced Petitioner to a term of imprisonment and, as part of that state sentence, directed that Petitioner's period of incarceration would be served concurrently with the then-still-upcoming federal sentence which eventually was rendered by Judge Huvelle.  Moreover, in light of two writs of habeas corpus ad prosequendum issued by Judge Huvelle, it appears likely that by the time of Judge Huvelle's sentence, Petitioner was in primary custody of the Commonwealth of Pennsylvania and, hence, began serving his federal sentence upon: (a) completion of his Pennsylvania prison term; and (b) being released from custody of the Commonwealth of Pennsylvania into custody of the BOP.

6. Therefore, it appears that Petitioner is claiming that the BOP calculated Petitioner's federal sentence imposed by Judge Huvelle as if that sentence began on the date of

---

[3] The Petition asserts that the judge presiding over Petitioner's state criminal proceedings was "Jeffrey Mineheart." See Instant Matter, Docket Entry No. 1, at 2.  While there is no judge "Jeffrey Mineheart" in the Commonwealth of Pennsylvania, this Court presumes that Petitioner refers to Judge Jeffrey P. Minehart, a judge on the Philadelphia County Court of Common Pleas.

     Petitioner's entry into BOP custody, and Petitioner's disagreement with that calculation was the basis for Petitioner's decision to commence the instant matter under § 2241, challenging the execution of his federal sentence.

7. While this Court's detective work could piece together the procedural context of Petitioner's state and federal convictions, this Court cannot do the same as to the issues of why Petitioner's challenge to BOP's calculation of sentence is viable under <u>Barden</u> and whether Petitioner's challenges based on that disappointment were duly exhausted administratively.

    a. While it appears rather certain that Petitioner is disappointed with the BOP's decision to calculate his federal sentence by employing the date of Petitioner's entry into BOP custody as the starting date of his federal sentence, the basis for Petitioner's position that the BOP is unduly executing his sentence is anything but certain. In <u>Barden</u>, the BOP contended that it had no discretion to consider giving credit for state sentences that were: (a) served; and (b) imposed to run concurrently with federal sentences. The Court of Appeals disagreed, pointing out that the United States Attorney General (or the BOP, as the Attorney General's delegatee) had discretionary power to

calculate federal sentences by crediting the already-served state sentence.  The term "discretionary power" means just that: upon good faith consideration of the statutory factors, the BOP may either grant or deny such credit.  Indeed, had the BOP been obligated to grant credit, it would have no discretion.  See Barden, 921 F.2d at 483 ("We hold only that the Bureau has power [but not the obligation] to grant relief").  Therefore, the role of the federal court sitting in habeas review is limited to determining whether the BOP gave the prisoner's application for nunc pro tunc credit good faith consideration in light of the applicable statutory factors; absent evidence that the BOP exercised its discretion in an impermissible way, the federal court sitting in habeas review is obligated to defer to the BOP's determination reached in its exercise of the discretionary power plainly established by the statutory regime.  See, e.g., Galloway v. Warden of F.C.I. Fort Dix, 2009 U.S. Dist. LEXIS 71201 (D.N.J. Aug. 12, 2009), reconsid. denied, Galloway v. Bureau of Prisons, 2009 U.S. Dist. LEXIS 82000 (D.N.J. Sept. 4, 2009), aff'd, 358 Fed. App'x 301 (3d Cir. 2009), app. dismissed, 385 Fed. App'x 59 (3d Cir. 2010), cert. denied, Galloway v. Zickefoose, 131 S. Ct. 1709

(2011).[4] Therefore, Petitioner's challenges here could have presented a viable claim only if Petitioner asserted facts indicating that the BOP, being served with Petitioner's request to grant Petitioner nunc pro tunc credit either: (i) outright refused to consider

---

[4] In the chain of Galloway proceedings, the district court explained to the prisoner that his "argument devolves into a contention that [the BOP's] exercise of good-faith discretion must necessarily result in grant of credit (rather than in denial of credit). Barden is not so broad. Barden does not hold that [the BOP] must give credit to each inmate seeking such credit." Galloway v. Warden of F.C.I. Fort Dix, 385 Fed. App'x at 61-62 (quoting the district court and holding that, "[i]n Barden, we explained that the answer to the question whether a petitioner is entitled to a favorable exercise of the BOP's discretion will depend on the Bureau's practice in making such designations, as well as its assessment of [the prisoner's] conduct in custody, the nature of his crime and all the other factors that govern penal authorities' consideration of a prisoner's request for relief from the strict enforcement of his sentence. We also noted that *neither the federal courts nor the BOP are bound in any way by a state court's direction that the state and federal sentences run concurrently*") (original brackets, ellipses, quotation marks and citations omitted, emphasis supplied). Thus, the Galloway chain of cases stresses lack of the "obligatory comity" advocated by Petitioner in this action; indeed, there, the Court of Appeals observed: "Attached to [the prisoner's application] in support of the appeal is a letter from the state court judge in which [the state judge] state[d] that 'it . . . is difficult to comprehend . . . what warranted the determination that [the prisoner's] state sentence, against our clear direction, should not run concurrent with the federal sentence imposed.' Even if we agreed with the state judge that the BOP's decision not to award [the prisoner] the Barden credit was 'difficult to comprehend,' the fact remains that the BOP [duly] reviewed [the prisoner's] request for nunc pro tunc credit and [duly] considered the factors enumerated in § 3621(b). Our review is thus limited [solely] to whether the BOP abused its discretion. . . . [W]e cannot say that the BOP abused its discretion." Id. at 64 (citations and original brackets omitted).

       the factors enumerated in § 3621(b); or (ii) exercised its discretion in an impermissible way.  <u>See</u> <u>id.</u>  Here, however, the Petition contain no single fact so asserting.  Moreover, the entirety of Petitioner's long discussion of what the law is or should be is based on his erroneous belief that this Court (or the BOP) is plainly obligated to effectuate the intentions of Judge Minehart.

b.    The foregoing, of course, does not mean that Petitioner cannot develop such facts in the event Petitioner seeks <u>nunc pro tunc</u> credit from the BOP, and the BOP addresses Petitioner's application in a fashion violating the requirements set forth in the statute and clarified in <u>Barden</u>.  However, to develop such facts, Petitioner has to exhaust his administrative remedies[5]

---

[5]  The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  <u>See</u> 28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response.  <u>See</u> 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  <u>See</u> <u>id.</u> Appeal to the

*and*, *in addition*, obtain responses from all three levels of the BOP showing that the final determination reached by the agency violates Barden.  Here, the Petition does not suggest, even vaguely, that Petitioner exhausted his administrative remedies or that he obtained a final determination from the BOP that violated Barden: all the Petition asserts is Petitioner's displeasure with the fact that the BOP calculated his federal sentence using the date of Petitioner's entry into BOP custody as the beginning date.  Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging  the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973). The exhaustion doctrine promotes a number of goals: it

---

General Counsel is the final administrative appeal.  See id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

>   is "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Goldberg v. Beeler, 82 F. Supp. 2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000); see also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). The case at bar presents a scenario where enforcement of exhaustion requirement is particularly fitting: without such exhaustion, Petitioner simply has no claim.

8.  The foregoing brings this Court to its final point; that point is directly related to the statement opening the Petition. As noted supra, the Petition opens with Petitioner's request to construe his challenges liberally in light of Petitioner's pro se litigant status. While it is true that pro se submissions are examined with a measure of tolerance, "[h]abeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified." See Rule 2(c) of the Rules

12

Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.  Here, Petitioner pleads nothing but his disappointment with the outcome of calculation of his federal term.  Therefore, to construe his Petition as viable, this Court would have to: (a) read into the Petition unstated – and even  not-hinted-at – allegations that Petitioner duly exhausted his challenges before all three levels of the BOP; and, then (b) presume, without any basis for such presumption, that these exhaustion  efforts yielded a final determination by the BOP that was reached either without the BOP's consideration of § 3621(b) factors or evinced the BOP's exercise of its discretion in an impermissible way.  That this Court cannot do upon the present sparse record.  Under Rule 2(c), it is Petitioner's obligation to plead "all [his] grounds for relief" and the "facts supporting each of the grounds." Having no basis to read the Petition as indicative of any violation of Petitioner's rights, this Court is constrained to dismiss the Petition.

IT IS, therefore, on this   **5th**    day of **October**, **2011**

ORDERED that the Petition, as drafted, is dismissed as unexhausted and alternatively for failure to allege facts indicative of violation of Petitioner's rights.  Such dismissal

is without prejudice to Petitioner's filing a new § 2241 petition in the event: (a) Petitioner duly exhausts his administrative remedies; *and* (b) upon such exhaustion, develops facts supporting Petitioner's <u>bona</u> <u>fide</u> belief that his rights were violated in light of the governing legal regime, as detailed in this Memorandum Opinion and Order; and it is further

ORDERED that, in the event Petitioner's challenges were fully exhausted administratively and, in addition, resulted in a determination violating Petitioner's rights in light of the governing legal regime, as detailed to Petitioner in this Memorandum Opinion and Order, Petitioner shall file, within thirty days from the date of entry of this Memorandum Opinion and Order, Petitioner's amended petition verifying due exhaustion and detailing the factual basis for Petitioner's challenges.  In the event Petitioner timely files such amended pleading, the Court will direct the Clerk to reopen this matter and will examine the amended pleading on merits; and it is further

ORDERED that the Clerk shall ADMINISTRATIVELY TERMINATE this action by making a new and separate entry on the docket reading "CIVIL CASE TERMINATED"; and it is further

ORDERED that, *regardless of whether or not Petitioner elects to file his amended petition in this action*, Petitioner shall submit, within thirty days from the date of entry of this

Memorandum Opinion and Order, his filing fee of $5.00 or his duly executed in forma pauperis application; and it is finally

ORDERED that the Clerk shall serve this Memorandum Opinion and Order upon Petitioner by regular U.S. mail.  The Clerk shall include in that mailing a blank in forma pauperis form for incarcerated individuals seeking to commence a habeas action.

        s/ Jerome B. Simandle
JEROME B. SIMANDLE
U.S. District Judge