UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DENNIS ROIE,<br><br>        Petitioner,<br><br>        v.<br><br>J.T. SHARTLE,<br><br>        Respondent. | Civil Action No. 11-4819 (JBS)<br><br>**MEMORANDUM OPINION** |

SIMANDLE, District Judge:

    This matter comes before the Court upon petitioner Dennis Roie's ("Petitioner") submission of an amended petition and it appears that:

1. On August 26, 2011, the Clerk received Petitioner's § 2241 petition ("Petition"). The Petition, a five-page document, suggested that Petitioner, a federal inmate currently confined at the F.C.I. Fairton, Fairton, New Jersey, wished to assert challenges related to the holding of Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990). See id. at 2.

2. On October 6, 2011, this Court issued a memorandum opinion and order ("October Order") addressing the challenges stated in the Petition. See Docket Entry No. 2. The content of the Court's lengthy October Order need not be repeated in the instant Memorandum Opinion and, thus, it shall suffice to state that the Court: (a) dismissed Petitioner's challenges without prejudice, since these challenges appeared unexhausted; and, in addition, (b) explained to Petitioner the limited scope of review allowed to federal courts under the holding of Barden. Specifically, the Court detailed as follows:

In Barden, the BOP contended that it had no discretion to consider giving credit for state sentences that were: (a) served; and (b) imposed to run concurrently with federal sentences. The Court of Appeals disagreed, pointing out that the United States Attorney General (or the BOP, as the Attorney General's delegatee) had discretionary power to calculate federal sentences by crediting the already-served state sentence. The term "discretionary power" means just that: upon good faith consideration of the statutory factors, the BOP may either grant or deny such credit. Indeed, had the BOP been obligated to grant credit, it would have no discretion. See Barden, 921 F.2d at 483 ("We hold only that the Bureau has power [but not the obligation] to grant relief"). Therefore, the role of the federal court sitting in habeas review is limited to determining whether the BOP gave the prisoner's application for nunc pro tunc credit good faith consideration in light of the applicable statutory factors; absent evidence that the BOP exercised its discretion in an impermissible way, the federal court sitting in habeas review is obligated to defer to the BOP's determination reached in its exercise of the discretionary power plainly established by the statutory regime. See, e.g., Galloway v. Warden of F.C.I. Fort Dix, 2009 U.S. Dist. LEXIS 71201 (D.N.J. Aug. 12, 2009), reconsid. denied, Galloway v. Bureau of Prisons, 2009 U.S. Dist. LEXIS 82000 (D.N.J. Sept. 4, 2009), aff'd, 358 Fed. App'x 301 (3d Cir. 2009), app. dismissed, 385 Fed. App'x 59 (3d Cir. 2010), cert. denied, Galloway v. Zickefoose, 131 S. Ct. 1709 (2011).[1]  Therefore, Petitioner's challenges

---

[1] In the chain of Galloway proceedings, the district court explained to the prisoner that his "argument devolves into a contention that [the BOP's] exercise of good-faith discretion must necessarily result in grant of credit (rather than in denial of credit). Barden is not so broad. Barden does not hold that [the BOP] must give credit to each inmate seeking such credit." Galloway v. Warden of F.C.I. Fort Dix, 385 Fed. App'x at 61-62 (quoting the district court and holding that, "[i]n Barden, we explained that the answer to the question whether a petitioner is entitled to a favorable exercise of the BOP's discretion will depend on the Bureau's practice in making such designations, as well as its assessment of [the prisoner's] conduct in custody, the nature of his crime and all the other factors that govern penal authorities' consideration of a prisoner's request for relief from the strict enforcement of his sentence. We also noted that *neither the federal courts nor the BOP are bound in any way by a state court's direction that the state and federal sentences run concurrently*") (original brackets, ellipses, quotation marks and citations omitted, emphasis supplied). Thus, the Galloway chain of cases stresses lack of the "obligatory comity" advocated by Petitioner in this action; indeed, there, the Court of Appeals observed: "Attached to [the prisoner's application] in support of the appeal is a letter from the state court judge in which [the state judge] state[d] that 'it . . . is difficult to comprehend . . . what warranted the determination that [the prisoner's] state sentence, against our clear direction, should not run concurrent with the federal sentence imposed.' Even if we agreed with the state judge that the BOP's decision not to award [the prisoner] the Barden credit was 'difficult to

        here could have presented a viable claim only if Petitioner asserted facts indicating that the BOP, being served with Petitioner's request to grant Petitioner <u>nunc pro tunc</u> credit either: (i) outright refused to consider the factors enumerated in § 3621(b); or (ii) exercised its discretion in an impermissible way. <u>See id.</u> Here, however, the Petition contain no single fact so asserting.

<u>Id.</u> at 7-10 (footnote in original).

3.    The Court's October Order closed with the statement that, in the event Petitioner did seek the <u>Barden</u> credit through administrative means, and the BOP either refused to consider § 3621(b) factors or exercised its discretion in an impermissible way, Petitioner could file an amended § 2241 habeas petition challenging the so-deficient determination. <u>See id.</u> at 10 and 14, and n. 5.

4.    On October 27, 2011, Petitioner submitted his amended petition ("Amended Petition"). <u>See</u> Docket Entry No. 4. While the submission made by Petitioner in conjunction with his filing of the Amended Petition was voluminous, <u>see id.</u> (reflecting a 36-page document), the actual Amended Petition is brief, <u>see id.</u> at 1-5; and the remainder of the submission is consumed by Petitioner's exhibits ("Exhibits"). <u>See id.</u> at 6-35.

5.    The Exhibits verify that Petitioner did, indeed, exhaust his administrative remedies at all three levels of the Bureau of Prisons ("BOP"). The response to Petitioner's challenges, issued by the Central BOP Office / National Inmate Appeals ("Central Office"), reads as follows:

---

comprehend,' the fact remains that the BOP [duly] reviewed [the prisoner's] request for <u>nunc pro tunc</u> credit and [duly] considered the factors enumerated in § 3621(b). Our review is thus limited [solely] to whether the BOP abused its discretion. . . . [W]e cannot say that the BOP abused its discretion." <u>Id.</u> at 64 (citations and original brackets omitted).

3

> This is in response to your Central Office Administrative Remedy Appeal in which you request the Bureau of Prisons recompute your sentence, to run concurrent to your state sentence. You provide no new information in this matter beyond that which you supplied at the institution and regional levels. However, as a result of <u>Barden v. Keohane</u>, 921 F. 2d 476 (3 Cir. 1990) your case was reviewed for a "nunc pro tunc" designation. We have reviewed your appeal according to the factors provided in 18 U.S.C. §3621(b). In your case, we have determined the relevant factors under the statute are (2), (3), and (4). With respect to factor (2), your instant federal offenses is Armed Bank Robbery, Aiding and Abetting, and Use of a Firearm During and in Relation to a Crime. With respect to factor (3), our records reveal that at the time of sentencing for your instant offense, you were in custody of the State of Pennsylvania. You were sentenced to a 6 year term for Manufacture, Sale, Deliver, or Possess Drugs. In addition, your criminal history includes convictions for Involuntary Manslaughter, and institutional infractions of Giving/Accepting Money without Authorization and Fighting with Another Person. Finally, considering factor (4), any statement by the Court which imposed the sentence; the federal Judgement and Commitment Order was silent regarding the relationship of the federal sentence to any impending state sentence. Title 18 U.S.C. §3584, Multiple Terms of Imprisonment states, in part: "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." However, the sentencing Court was contacted and requested to provide input regarding your request. The Court stated they have no position on retroactivity, but requested we assess your conduct and behavior while incarcerated. Based on the foregoing, we have determined that a "nunc pro tunc" designation is not consistent with the goals of the criminal justice system due to the nature of your state conviction, repetitive criminal conduct, and the intent of the court. Additionally, the [<u>Willis</u>] credit you seek has already been applied toward your state sentence. Your sentence has been computed as directed by federal statute and Program Statement 5880.28, Sentence Computation Manual . . . . Your appeal is denied.

Docket Entry No. 4, at 19.

6.   In accord with Petitioner's challenges raised administratively, Petitioner's Amended Petition now asks the Court to award Petitioner "a" credit, which would allow him to have the term of his state confinement deducted from the federal term he is currently

4

serving; in support of his request, Petitioner: (a) cites the holding of <u>Willis v. United States</u>, 438 F.2d 923 (5th Cir. 1971); (b) reiterates, once again, his reference to <u>Barden</u>; and, in addition, (c) asserts, generally, that

> [P]etitioner negotiated a plea agreement with the Commonwealth of Pennsylvania . . . .  In an apparent oversight, [P]etitioner's . . . assume[d] that the plea agreement was valid at the time of its formation. . . . [However, P]etitioner's . . . faith in the concurrent sentence recommendation in his plea agreement was fostered, or at least not dispelled, by the State prosecutor and sentencing judge, [and if Petitioner's faith in the validity of concurrent sentence recommendation was misplaced, then his] his guilty plea was not knowing and voluntary. The State prosecutor, defense counsel, and [the state] court should have known that the [s]tate [c]ourt had no authority to dictate how [P]etitioner's undischarged federal sentence would be served.  The prosecutor's promise of a concurrent sentence therefore was hollow. . . .  Petitioner claims that his guilty plea to state charges was induced by a promise which was later negated by an act of the BOP.

Docket Entry No. 4, at 3-4.

The Court will address each of Petitioner's challenges based upon the record.

7. Here, authorities in the Commonwealth of Pennsylvania arrested Petitioner prior to his arrest on federal charges.  Therefore, the Commonwealth retained primary jurisdiction over Petitioner during the entire time until his release from his state sentence into federal confinement, <u>i.e.</u>, when Petitioner's state sentence was satisfied and the state relinquished primary authority to the BOP.  See <u>Del Guzzi v. United States</u>, 980 F.2d 1269 (9th Cir. 1992); <u>Thomas v. Whalen</u>, 962 F.2d 358 (4th Cir. 1992).  Since the Commonwealth had primary jurisdiction over Petitioner and credited the period of his custody to his state sentence, Petitioner is not entitled to receive credit for prior custody on his federal sentence.  While, in certain limited circumstances, such as those enumerated by the Fifth

5

    Circuit in <u>Willis</u> and by the Seventh Circuit in <u>Kayfez v. Gasele</u>, 993 F.2d 1288 (7th Cir. 1993), an inmate may obtain a double credit for prior custody, the inmate may receive such double credit only when the <u>federal</u> sentence is ordered to run concurrently with the state one.  Conversely, in those circumstances where an inmate finished serving his state sentence before his federal sentence commenced, "the <u>Kayfez</u> and <u>Willis</u> line of cases [is] inapplicable." <u>Castro v. Sniezek</u>, 2011 U.S. App. LEXIS 13514, at *6 (3d Cir. June 29, 2011); <u>see</u> also <u>Galloway</u>, 385 Fed. App'x 59, at 61 (explaining that an inmate could "not qualif[y] for a double credit under either <u>Willis</u> . . . or <u>Kayfez</u> . . . because his federal sentence was not [ordered] concurrent with his state sentence").  Since there is no dispute that Petitioner's federal judge did not impose a sentence running concurrently with Petitioner's then-already-existing state sentence, Petitioner's reliance on <u>Willis</u> is without merit.  Therefore, to the extent Petitioner seeks award of a <u>Willis</u> credit, this Court is constrained to agree with the BOP's determination to deny Petitioner's request.

8.   Petitioner's <u>Barden</u>-based challenges were already addressed by this Court and dismissed with a qualification that Petitioner may reassert these challenges only in the event the BOP either refused to consider § 3621(b) factors or exercised its discretion in an impermissible way. <u>See</u> Docket Entry No. 2. The above-quoted response from the Central Office indicates, in no ambiguous terms, that the BOP duly considered the § 3621(b) factors.  It appears that Petitioner does not dispute this fact; rather, it seems that Petitioner aims to assert that the BOP exercised its discretion in an impermissible way because: (a) Petitioner's federal judge, upon being contacted by the BOP, recommended

the BOP to assess Petitioner's conduct while incarcerated;[2] (b) during his federal incarceration, Petitioner earned certain certificates while attending certain BOP trainings;[3] but (c) the BOP did not conclude that these certificates outweigh other considerations prompting against awarding him the <u>Barden</u> credit. Petitioner's <u>Barden</u>-based argument is without merit. Here, the BOP based its conclusion (that Petitioner should not be awarded the <u>Barden</u> credit) upon weighing in the facts, as mandated by the statute, such as Petitioner's federal offenses underlying his current confinement (<u>i.e.</u>, armed bank robbery, aiding and abetting, and use of a firearm during execution of his crime), Petitioner's prior criminal history (<u>i.e.</u>, involuntary manslaughter and manufacture, sale, delivery and possession of drugs), Petitioner's institutional infractions (<u>i.e.</u>, giving/accepting money without authorization, as well as an his altercation with another person) and the fact that Petitioner's federal judge expressly took <u>no</u> position on whether Petitioner should or should not be awarded the <u>Barden</u> credit. While Petitioner argues that his satisfactory completion of certain BOP training programs had to outweigh all above-listed considerations, Petitioner's position is without merit: the BOP's determination cannot qualify as abuse of the agency's discretion. Therefore, to the degree

---

[2] To that effect, the request reflected, in part, the factor listed as § 3621(b)(3) (requesting the BOP to assess the history and, in addition, overall *characteristics* of the prisoner).

[3] Specifically, the Exhibits attached to Petitioner's Amended Petition indicate that he satisfactorily: (a) completed a 25-hour training in sign language; (b) completed a 5-hour training given during the parenting day workshop; (c) completed a 1-hour training in parenting orientation, completed a 16-hour training in "Saturday Movies"; (d) completed a 6-hour training in typing, completed a 10-hour training in "Education Awareness"; (e) completed an 8-hour training in "Education Awareness Phase"; (f) twice completed an 8-hour training in drug awareness; (g) completed a 12-hour training in real estate; and (h) completed a "'Say What?' Communication Skills Group" program. <u>See</u> Docket Entry No. 4, at 24-34.

Petitioner wished to re-raise his Barden argument, the record provided by Petitioner's Amended Petition verifies that Petitioner's Barden challenges are without merit.[4]

---

[4] The Amended Petition reiterates Petitioner's position that the BOP's decision was an undue usurpation of judicial power because the BOP did not follow the decision of Petitioner's state judge. However, as this Court already pointed out in its prior opinion, the intentions of state judiciary are not a relevant consideration for the purposes of the Barden analysis. See Galloway v. Warden of F.C.I. Fort Dix, 385 Fed. App'x at 63.

> Attached to [the petitioner's] response in support of the appeal is a letter from [his] state court judge in which [the judge] states that "it appears the BOP considered the sufficiency of the Fort Dix resources, [the p]etitioner's multiple terms of imprisonment, his drug history, and the lack of a reply from the federal sentencing judge. It is difficult to comprehend . . . what warranted the determination that [the petitioner's] state sentence, against our clear direction, should not run concurrent with [his] federal sentence . . . ." Even if we agreed with the state judge that the BOP's decision not to award [the petitioner] the Barden credit was 'difficult to comprehend," the fact remains that the BOP reviewed [the petitioner's] request for nunc pro tunc credit and considered the factors enumerated in § 3621(b). Our review is thus limited to whether the BOP abused its discretion. In view of, as the judge notes, the sufficiency of the resources at FCI-Fort Dix and [the petitioner's] criminal drug history, we cannot say that the BOP abused its discretion in [the petitioner's] case.

Id. (citations and original brackets omitted).

Moreover, even post-sentencing recommendations of Petitioner's federal judge cannot bind the BOP. See Caldwell v. Miner, 2006 U.S. Dist. LEXIS 58494, at *5, n. 2 (D.N.J. Aug. 7, 2006) ("the BOP merely had to seek the thoughts of the sentencing judge, but neither had to obtain them if the judge did not respond to BOP's inquiry, nor to follow them") (citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), and Barden), aff'd, Caldwell v. Miner, USCA Index No. 06-4666; see also In re Caldwell, 229 Fed. App'x 194 (3d Cir. 2007) (where the petitioner sought and *obtained* post-sentencing recommendations of his federal judge prompting the BOP to *actually grant* the petitioner the requested Barden credit, and where the BOP refused to follow these recommendation, the federal court was without power to order the BOP to follow the judicial recommendation); USA v. Caldwell, USCA Index No. 11-2376 (reiterating the same once again). Here, Petitioner's federal judge did not make any recommendation as to grant of the Barden credit; the only recommendation made by Petitioner's federal judge was to consider Petitioner's behavior while in federal confinement. The record verifies that the BOP did exactly as requested and found that grant of the Barden credit was unwarranted. The fact that the BOP did not reach a result Petitioner seeks cannot render the BOP's determination an abuse of discretion. Eccleston v. United States, 390 Fed. App'x 62, 65 (3d Cir. 2010) ("The test is not

9. Finally, the Court notes Petitioner's positions that: (a) the BOP's decision effectively "negated" the benefit of the plea agreement reached between Petitioner and his prosecutors (pursuing state charges against Petitioner); and/or (b) Petitioner's plea agreement entered in the state court should be deemed involuntary, since it was based on Petitioner's lack of understanding that the state court's sentencing decision would not bind the BOP and/or was a result failure of state prosecutor or state defense counsel and/or state court to clarify this aspect to Petitioner prior to his entry of guilty plea. However, neither one of these positions merits habeas relief. To the degree Petitioner aims to mount plea-agreement-related challenges against the BOP, these challenges are facially deficient, since the United States and the BOP were not parties to Petitioner's plea agreement with regard to his state charges. Therefore, the BOP was neither bound by that agreement nor could the BOP be held to breach it. That leaves the Court solely with Petitioner's claims asserting lack of voluntariness of his state guilty plea.

10. It is self-evident that Petitioner cannot litigate the voluntariness of his state guilty plea in the instant § 2241 action: Section 2241 is an appropriate mechanism for a prisoner to challenge the *execution* of his *federal* sentence, not the validity of his state conviction, see Coady v. Vaughn, 251 F.3d 480, 485-86 (3d Cir. 2001); Barden, 921 F.2d at 478-79; it is 28 U.S.C. § 2254 that should be the vehicle to challenge a state conviction. Here, it would be futile to re-characterize Petitioner's Amended Petition into a § 2254

---

whether a reviewing court would weigh the factors differently. The writ may issue only where an error is fundamental and carries a serious potential for a miscarriage of justice. Here, the BOP did not consider factors outside of the statute . . . . We discern no abuse of discretion here").

application, not only because such application would be untimely[5] and unexhausted in state courts,[6] but also because Petitioner is no longer "in custody" pursuant to the state judgment of conviction associated with his plea agreement.[7]  Since Petitioner's Amended

---

[5] On April 24, 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). For the purposes of Petitioner's Application, the limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1). A state-court criminal judgment becomes "final" within the meaning of §2244(d)(1) by the conclusion of direct review or by the expiration of time for seeking such review, including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court. See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13. "If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired." Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999).

[6] A state inmate applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or . . . circumstances exist that render such process ineffective. . . ." 28 U.S.C. § 2254(b)(1); Rose v. Lundy, 455 U.S. 509, 515 (1982); Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993); Duarte v. Hershberger, 947 F. Supp. 146 (D.N.J. 1996); see also Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001) ("prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts"). The courts of a state must be afforded an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Wilwording v. Swenson, 404 U.S. 249, 250 (1971); Picard v. Connor, 404 U.S. 270, 275 (1971); Evans v. Court of Common Pleas, Del. Cty., Pa., 959 F.2d 1227, 1230 (3d Cir. 1992), cert. dismissed, 506 U.S. 1089 (1993).

[7] Habeas statutes exist to provide a means of affording prisoners immediate or future release from custody. See Preiser v. Rodriguez, 411 U.S. 476, 484 (1972) ("It is clear . . . from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody"); Obado v. New Jersey, 328 F.3d 716, 717 (3d Cir. 2003). Thus, to invoke habeas corpus review by a federal court, the petitioner must be "in custody" under e order he is challenging. See Maleng v. Cook, 490 U.S. 488, 490 (1989); 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 8.1 (4th ed. 2001). The Supreme Court has "interpreted the statutory language as requiring that the habeas petitioner be 'in custody'

Petition, re-characterized into a § 2254 application, would necessarily be subject to dismissal for lack of jurisdiction due to Petitioner's failure to meet the "in-custody" requirement, such re-characterization would be futile.

11. The Court has also considered whether Petitioner's Amended Petition may qualify as an application for a writ of error coram nobis, see United States v. Stoneman, 870 F.2d 102, 105-06 (3d Cir. 1989), since the coram nobis writ "is used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has served his sentence and is no longer 'in custody.'" Id. at 105-06; see also United States v. Baptiste, 223 F.3d 188, 189 (3d Cir. 2000). "In federal courts the authority to grant a writ of coram nobis is conferred by the All Writs Act, which permits 'courts established by Act of Congress' to issue 'all writs necessary or appropriate in aid of their respective jurisdictions.'" United States v. Denedo, 129 S. Ct. 2213, 2221 (2009) (quoting 28 U.S.C. § 1651(a)). Here, however, re-characterization of the Amended Petition into an application for a writ of error coram nobis would, too, be futile, since "coram nobis is not available in a federal court as a means of attack on a state criminal judgment." Obado v. New Jersey, 328 F.3d 716, 718 (3d Cir. 2003); accord Finkelstein v. Spitzer, 455 F.3d

---

under the conviction or sentence under attack at the time his petition is filed." Maleng, 490 U.S. at 490-91; see also Spencer v. Kemna, 523 U.S. 1, 7 (1998). Significantly, a petitioner does not remain "in custody" under a conviction after the sentence imposed for it has fully expired. See Maleng, 490 U.S. at 493 ("While we have very liberally construed the 'in custody' requirement for purposes of federal habeas, we have never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction"); see also Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 401 (2001); Drakes v. INS, 330 F.3d 600 (3d Cir. 2003). "In making a custody determination, [federal courts look] to the date that the habeas petition was filed." Leyva v. Williams, 504 F. 3d 357, 363 (3d Cir. 2007) (quoting Barry v. Bergen County Probation Dept., 128 F. 3d 152, 159 (3d Cir. 1997)). Here, it is undisputed that Petitioner's state sentence expired years before the his filing of the original Petition.

|     |     |
| --- | --- |
|     | 131, 134 (2d Cir. 2006); <u>Lowery v. McCaughtry</u>, 954 F.2d 422, 423 (7th Cir. 1992).  In other words, the writ of error <u>coram</u> <u>nobis</u> is available in federal court only with regard to those convictions that were rendered by a federal court.  <u>See</u> 28 U.S.C. 1651(a); <u>Neyor v. I.N.S.</u>, 155 F. Supp. 2d 127, 136 (D.N.J. 2001). |
| 12. | In conclusion, the Court will dismiss the Amended Petition without prejudice to Petitioner's raising his plea-related challenges in state courts.  The Court, however, stresses that no statement made in this Memorandum Opinion and Order shall be construed as expressing this Court's position as to validity or invalidity or timeliness of Petitioner's plea-related challenges to his state conviction, that is, if Petitioner raises such challenges in state courts. |
|     | The accompanying Order will be entered. |

**November 14, 2011**            s/ Jerome B. Simandle
Date            JEROME B. SIMANDLE
            U.S. District Judge